| | | |
|---|---|---|
| STATE OF INDIANA ) | | IN THE US DISTRICT COURT OF COUNTY |
| ) SS: | | HAMMOND, INDIANA |
| COUNTY OF ) | | |

| | |
|---|---|
| DAVID C. HANSEN II ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. |
| ) | |
| THE LUTHERAN UNIVERSITY ) | |
| ASSOCIATION, INC. D/B/A VALPARAISO ) | |
| UNIVERSITY, ANNE MARIE FUTRELL, ) | |
| DEANDRA DEVITT, LAURA CHILDERS, ) | |
| & JASON KUTCH, ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff David C. Hansen II (hereinafter "Hansen"), by and through counsel, Robin Remley of the Law Office of Robin Remley LLC and for his COMPLAINT against the Defendants, Lutheran University Association, Inc. d/b/a Valparaiso University ("VU"), Anne Marie Futrell ("Futrell"), Deandra Devitt ("Devitt"), Laura Childers ("Childers"), and Jason Kutch ("Kutch") and unknown supervisors and managers, states as follows:

### I. Introduction

1. Plaintiff filed this action to redress violations by Defendants, Valparaiso University, Anne Marie Futrell, Deandra Devitt, Laura Childers, and Jason Kutch and unknown supervisors and managers of the Family Medical Leave Act ("FMLA"), and other related claims.

### II. Jurisdiction and Venue

2. This action is initiated pursuant to the FMLA, among other claims. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

3. The United States District Court for the Northern District of Indiana has original subject matter jurisdiction, and venue is properly laid in this district because the claims arise under laws of the United States and all actions took place in the county of Porter, State of Indiana.

### III.    Parties/Background

4. Plaintiff Hansen is a citizen of the United States, and at all times described herein, was residing in the County of Porter, State of Indiana.

5. Defendant, Valparaiso University, does business in County of Porter, State of Indiana.

6. Defendants Anne Marie Futrell, Deandra Devitt, Laura Childers, and Jason Kutch were all supervisors or employees of Valparaiso University, with authority and/or control over employment actions with respect to Hansen, including but not limited to his termination, which is the subject of this litigation.

7. Futrell and Kutch were supervisors or superiors of Hansen—with frequent contact and authority over employment decisions prior and during Hansen's medical leave and up to and including his termination.

8. Futrell and Kutch, had authority over employment decisions pertaining to Hansen (or was allowed to act in such capacity, or was allowed to do), and portrayed

themselves as such prior to, and during Hansen's medical leave and up to and including his termination.

9. Childers and Devitt were all affiliated with VU Human Resources, and had authority and/or control over employment actions with respect to Hansen, including but not limited to his termination, which is the subject of this litigation.

10. All of the foregoing individuals had authority and control to prevent or control or perpetuate actions with respect to Hansen's employment. All took part in human resource related activities and actions, and either had knowledge of requirements of the FMLA, and other employment laws, or at least should have known of such requirements and responsibilities had they proper inquired and reviewed and trained, as they were clothed with the responsibility to do so.

11. Hansen worked for VU as Assistant Director of FM/Building Services, on a full-time basis.

12. In 2023, VU began using Lincoln Financial Company to coordinate FMLA and Disability claims. Hansen was told by Human Resources that he was either one of the first or the first employee to be on FMLA through Lincoln Financial Company.

13. Hansen had surgery on his left shoulder on February 10, 2023. He was approved for FMLA and Short-Term Disability, which began on February 9, 2023.

14. Hansen was off work for the first six weeks pending a physician follow-up appointment dated March 23, 2023.

15. The doctor then had Hansen off work another six weeks, while on physical therapy, pending a physician follow-up appointment.

16. Hansen followed the instructions given to him by Lincoln Financial case manager Morgan Bergeron who told him to upload any documents he received from the physician's office to the portal on the Lincoln Financial website and to also call him with the updates.

17. Hansen fulfilled all of the requests. Bergeron stated that he would need to get further information from the physician's office then will contact Hansen if the leave extension was approved.

18. On March 23, 2023, Hansen received a text message from Lincoln Financial that the leave extension was approved from March 23 to April 5. Hansen then received another text message on April 4, 2023, stating that the leave extension was approved to May 4, 2023. The leave approval was backdated to begin on March 23. It took Lincoln Financial approximately a week to process and approve the leave extension request.

19. Hansen's next follow-up appointment was on May 4, 2023. The doctor ordered more physical therapy for strengthening and range of movement and continued to have Hansen off work for six weeks pending physical therapy and follow-up. Again, Hansen followed the instructions given to him by Morgan Bergeron at Lincoln Financial and uploaded any documents he received from the physician's office to the portal on the Lincoln Financial website and to also call him with the updates.

20. This time Hansen was not able to reach Bergeron, so he left a voicemail. That afternoon, Hansen received an email from Lincoln Financial stating "We are writing to inform you that your leave under the Family & Medical Leave Act (FMLA) for a leave of absence due to your own medical condition has been closed because you have used all available leave entitlement as of May 3, 2023." "Contact your employer to schedule your return to work and

discuss your employment status. In most cases, if you return before or at the conclusion of your leave, you will be reinstated to the same or an equivalent position upon your return from your leave. Failure to return to work at the end of your leave may result in your employer terminating your employment for job abandonment."

21. This completely caught Hansen by surprise because based on some of his staff being on FMLA, it was common knowledge per policy, that there was a 4-week FMLA extension option if approved. Yet the email gave no direction on how to request the extension.

22. Further, prior to this email, there was no notification of the expiration of FMLA or instructions to make contact before May 4, 2023, or to discuss reinstatement.

23. Consequently, Hansen began asking questions and trying to figure out the procedures and requirements in relation to FMLA and extension of leave.

24. Following the direction on the email, Hansen immediately called Childers, who is the Benefits Manager in Human Resources. Hansen explained to her the situation and asked her what to do to get the leave extension and to ensure his position was secure.

25. Childers told Hansen that she did not know and that he would need to contact his supervisor about it. This was odd to Hansen, because he knew historically Futrell has explained to Hansen that medical information is handled by Human Resources due to HIPPA regulations, yet HR directed Hansen to speak to his supervisor about it.

26. Hansen immediately called Futrell, who stated that she did not know about this new process, and she would need to get back to him about it. She never did.

27. On May 20, 2023, Hansen received an invite to a zoom meeting with Futrell, Devitt, and Kutch, to take place May 22, 2023. Worried about his position, Hansen contacted Futrell and asked her if she knew what the meeting was about. She said she did not know and

told Hanen several times to not worry about it and to enjoy the nice weekend. Hansen told her that she was scheduled to be in the meeting as well and she stated that she did not know that but that she did have a meeting scheduled with Kutch at 7:00 AM the same day.

28. On May 22, 2023, Futrell and Hansen were in the virtual meeting first. She and Hansen were having friendly small talk until Devitt and Kutch joined so the meeting could begin.

29. Kutch thanked Hansen for his service then explained to Hansen that they decided to restructure the department and eliminate Hansen's position as Facilities Management/Building Services Assistant Director and take part of that salary to create another supervisor position.

30. Hansen asked how it was determined that the position was no longer necessary. Devitt responded that it was just a reorganization.

31. Hansen asked if the decision not to keep him as an employee was determined by performance. Devitt stated no multiple times.

32. Hansen then asked since the decision was not performance based and the department is in a staffing crisis, wouldn't be prudent to keep him on as an experienced, skilled employee? Devitt stated that Hansen would be required to apply for any position at the university the same as anyone else.

33. Hansen asked if he could transition into another role, since he was already employed and Devitt stated, "No, you would have to apply for any position."

34. Hansen asked why this decision was made while he was on medical leave. Nobody answered. He asked if it was coincidence. Devitt responded, "Sure". She repeated that other departments are restructuring.

35. There was no mention to Hansen of elimination of his position, prior to his medical leave, or during his medical leave.

36. Instead of reinstating Hansen to an equivalent position with equivalent pay and benefits upon his return from FMLA leave, VU terminated him.

37. When Hansen asked questions and sought clarification regarding FMLA leave and an FMLA extension, instead of providing answers, Defendants responded with termination.

**COUNT I – Family Medical Leave Act Interference-all Defendants**

38. Paragraph 36 hereby re-alleges and incorporates Paragraphs 1-37 as if fully set out herein.

39. Defendant Valparaiso University was and is a covered employer under the FMLA, 29 U.S.C. Sect. 2611(4)(A).

40. At all times herein relevant, David Hansen was an eligible employee with a serious health condition, pursuant to the FMLA.

41. The FMLA prohibits employers from "interfering with, restraining, or denying" an employee's exercise of FMLA rights. See 29 U.S.C. 2615.

42. At all times herein, VU had more than 50 employees, and thus is subject to the mandates of the FMLA.

43. David Hansen was eligible for FMLA leave at all relevant times in that he had worked more than 1250 hours in the preceding twelve (12) months prior to application for leave.

44. David Hansen was qualified for FMLA leave in that he had a serious health condition, per the FMLA.

45. Defendants' actions in refusing or failing to reinstate Hansen to his prior position, or to a position of equivalent pay and benefits interfered with, and restrained Hansen's exercise of FMLA rights.

46. Defendants' actions in terminating Hansen interfered with, and restrained Hansen's exercise of FMLA rights.

47. Defendants Anne Marie Futrell, Deandra Devitt, Laura Childers, and Jason Kutch are individually liable pursuant to definitions under the FMLA, due to their control over David Hansen's leave, benefits, and termination. Each had the ability and duty to ascertain the rules, regulations, and requirements of the FMLA, but failed in doing so and/or properly applying the same.

48. Further, Valparaiso University is vicariously liable for the actions and inactions of Anne Marie Futrell, Deandra Devitt, Laura Childers, and Jason Kutch, via respondeat superior, as each was acting within the scope of his/her employment with Valparaiso University at the time of his/her actions and/or inactions.

49. Defendants' actions were not in good faith.

50. As a direct and proximate result of these Defendants' conduct, Hansen has suffered damages, including lost pay, tuition and benefits, emotional distress, and costs and attorneys fees.

WHEREFORE, Plaintiff seeks judgment against the Defendants in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated damages per statute, attorney's fees, and all other just and proper relief.

**COUNT II – Violation of the Family Medical Leave Act – Retaliation- All Defendants**

51. Paragraph 51 hereby re-alleges and incorporates Paragraph 1 through 50 as if fully set out herein.

52. The actions and inactions of Defendants were in retaliation for Hansen exercising his FMLA rights, and/or Hansen questioning procedures and seeking information regarding FMLA, questioning and seeking information regarding his reinstatement following leave, and questioning and seeking information regarding extensions of his leave.

WHEREFORE, Plaintiff seeks judgment against the Defendants in an amount that is fair and reasonable in the premises, plus costs of this action, liquidated or punitive damages per statute, attorney's fees, and all other just and proper relief.

**COUNT III – Intentional Infliction of Emotional Distress—All Defendants**

53. Paragraph 53 hereby re-alleges and incorporates Paragraph 1 through 52 as if fully set out herein.

54. Defendants knew or should have known that Hansen was peculiarly susceptible to emotional distress, in that he had been on medical leave recuperating from surgery and anticipated reinstatement to his prior position or an equivalent position, that he was getting close to obtaining his associate's degree via the benefit of free tuition and that

termination would eliminate his ability to do so. Thus, Defendants' actions were intentional or recklessly negligent.

55. Defendants' extreme and outrageous behavior caused Hansen to suffer severe emotional distress.

**WHEREFORE**, Plaintiff hereby requests judgment against Defendants in amount to fully compensate him, for all punitive or liquidated damages available by statute or otherwise, for all costs, interest and attorney's fees related to this matter, and for all other just and proper relief in the premises.

Respectfully submitted,

/s/ Robin G. Remley
Robin G. Remley
robin@remley-law.com
Attorney for Plaintiff David Hansen
Law Office of Robin Remley LLC
123 N. Main St
Suite 204-C
Crown Point, IN 46307(219) 756-9600

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

/s/ Robin G. Remley
ROBIN G. REMLEY (22517-45)
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on June 28, 2024 service of a true complete copy of the foregoing pleading or paper was made upon each party or attorney of record via Odyssey.

/s/ Robin G. Remley

Robin G. Remley