UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DAVID C. HANSEN II,

    Plaintiff,

       v.

THE LUTHERAN UNIVERSITY
ASSOCIATION, INC. D/B/A
VALPARAISO UNIVERSITY, ANNE
MARIE FUTRELL, DEANDRA DEVITT,
LAURA CHILDERS, & JASON KUTCH,

    Defendants.

Cause No.: 2:24-cv-244

## OPINION AND ORDER

David Hansen claims that his former employer, Valparaiso University, violated the Family Medical Leave Act when it eliminated his position just as his leave was ending. Hansen sues not just Valparaiso University but also some of the individuals he alleges were involved in the decision-making—Annamarie Wilson-Futrell (incorrectly named as "Anne Marie Futrell"), Deondra Devitt (incorrectly named as "Deandra Devitt"), Laura Childers, and Jason Kutch. All defendants now seek summary judgment. [DE 33.]  Because there is no evidence that the defendants interfered with Hansen's FMLA rights or retaliated against him for taking FMLA, summary judgment will be GRANTED.

## Factual Background

David Hansen was an employee at Valparaiso University, which is colloquially referred to as "Valpo". [DE 41-2, ¶ 11.] Valpo is privately owned and operated by the

1

Lutheran University Association, Inc., a nonprofit corporation. *Id.* at ¶ 2. Hansen began working at Valpo in 2010 and has held a variety of different jobs on campus. *Id.* at ¶¶ 10-11.

To fully understand what happened in this case, one needs to understand the hierarchy of Valpo's facilities department. At the relevant time, Jason Kutch was Valpo's Executive Director of Facilities. Annamarie Wilson-Futrell was the Director of Building Services, and she reported to Kutch. *Id.* at ¶¶ 3-5. The next step down the organizational chart was Hansen, who reported to Wilson-Futrell and was the Assistant Director of Building Services, a position he was promoted to in 2019 and held until his employment with Valpo ended in May 2023. *Id.* at ¶ 11. Hansen, in turn, supervised three building services supervisors. *Id.* at ¶ 12.  Prior to Hansen being promoted in 2019, there were four building services supervisors. *Id.* at ¶ 13.

In 2021, Hansen took medical leave under the FMLA. *Id.* at ¶ 16. He testified that he took the leave without issue and that he does not feel as if Valpo retaliated against him for taking that leave. *Id.* at ¶ 17. Defendants have presented evidence that three other Valpo employees took FMLA leave in the subsequent two years without incident. *Id.* at ¶¶ 56-58. Hansen disputes that these employees took FMLA leave without incident on the basis that these assertions are only supported by "conclusory," "unsupported," and "self-serving" declarations by Defendants. *Id.* More on that in a moment.

In September 2022, Hansen emailed the Valpo Human Resources Department to request paperwork for an upcoming surgery in October 2022. *Id.* at ¶ 18. HR sent him

the forms the same day he requested them. *Id.* In October, HR emailed Hansen again to see if he still needed the FMLA leave, but Hansen never responded to that email. *Id.* In late December 2022, Hansen emailed HR again to request the paperwork for FMLA leave, saying the surgery was now scheduled for January 2023. *Id.* at ¶ 19. Valpo told him that, starting in 2023, Lincoln Financial Group would be handling their leave requests and once again provided him with the necessary FMLA forms. *Id.* at ¶¶ 19-20. His surgery was then rescheduled for February 2023, and Lincoln Financial Group informed him that his leave request was approved for up to 480 hours. *Id.* at ¶¶ 23-24.

Hansen began his FMLA leave on February 9, 2023. *Id.* at ¶ 24. Hansen used all 480 hours (12 weeks) of approved leave that he was entitled to under the FMLA. *Id.* at ¶ 26. Lincoln Financial Group additionally approved Hansen's leave extension request, extending his leave into May. *Id.* at ¶ 27. Hansen then requested another leave extension. *Id.* at ¶ 29. Over a month later in June, Lincoln Financial Group approved that request for additional leave. *Id.*

Prior to Hansen taking FMLA leave, Kutch and Wilson-Futrell began discussing the elimination of Hansen's position of Assistant Director of Building Services. *Id.* at ¶ 34. The department was top-heavy with managers and both Kutch and Wilson-Futrell viewed Hansen's position as "an unnecessary layer of management." *Id.* at ¶ 38. Under the newly proposed organization, there would be four building supervisors who would all report directly to the Director (Wilson-Futrell), and the Assistant Director position occupied by Hansen would be eliminated. The decision to eliminate the one layer of

management was borne out of efficiency and the need to reallocate resources in a more effective way. *Id.*

According to Wilson-Futrell, none of this was a surprise to Hansen. Throughout the time Hansen was in the Assistant Director of Building Services position, Defendants assert that Wilson-Futrell had been discussing with Hansen whether the position was necessary. *Id.* at ¶ 35. Hansen admits that they discussed the position and what would happen if it were eliminated generally, but disputes that he had been told anything about a plan to eliminate the position. *Id.*

After deciding to eliminate the position, Valpo employees Kutch, Wilson-Futrell, and Deondra Devitt had a videoconference meeting with Hansen on May 22, 2023. *Id.* at ¶ 44. Devitt was Valpo's Executive Director of Human Resource Services. *Id.* at ¶ 5. At the meeting, Kutch told Hansen that Valpo was eliminating the Assistant Director position and adding back a fourth building supervisor position. *Id.* at ¶ 44. Devitt told Hansen that the decision did not have to do with his medical leave and was the result of Valpo's decision to restructure the Building Services Department. *Id.* at ¶ 45. Devitt told Hansen he was welcome to apply to the new role or any other role in the Building Services Department. *Id.* Hansen does not dispute that he was told these things during the meeting but, without citing to any evidence to the contrary, disputes the truthfulness of the statements. *Id.* Instead of offering evidence, Hansen simply responded by saying that Valpo's evidence was based on "self-serving affidavits." *Id.*

Valpo offered Hansen either a severance payment with an associated release of claims or a position as a Building Services Technician. *Id.* at ¶¶ 59, 63. The job as a

4

technician paid less than his previous position. [DE 43, ¶ 15.] Hansen refused both options. [DE 41-2 at ¶ 63.] When Hansen's attorney asked for the job posting for the new building supervisor position, Valpo's General Counsel responded that no determination had been made yet to create that position and that it may not be made, so there was no supervisor job posting to share. [DE 43 at ¶ 14.]

Despite what Hansen was told about the creation of a fourth Building Supervisor position, the position was not created until a year and a half later, in October 2024. [DE 41-2, ¶ 60.] Defendants say this is because, while Kutch and Wilson-Futrell were planning on creating the position before the May 2023 meeting with Hansen, the position was not approved by Valpo's Office of Finance and Administration until much later. *Id.* Once again, Hansen's rote response to that statement of fact does not point me to any evidence; instead, Hansen simply says the Defendants' evidence is a "conclusory," "unsupported," and "self-serving" declaration. *Id.*

### Discussion

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Hansen has two remaining claims, both under the FMLA: one for FMLA interference and a second for FMLA retaliation. Regarding the interference claim, the FMLA mandates that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. 29 U.S.C. § 2615(a)(1). With respect to retaliation claims, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

The key difference between the two types of claims is that a retaliation claim requires "proof of discriminatory or retaliatory intent," while an interference claim requires only "proof that the employer denied the employee his or her entitlements under the Act." *Goelzer v. Sheboygan Cnty., Wis.,* 604 F.3d 987, 995 (7th Cir. 2010). Under either claim, an employer does not commit a violation by failing to reinstate a plaintiff to his former position if the decision to let the employee go was unrelated to the employee's leave request. *Ogborn v. United Food and Commercial Workers Union, Local No. 881,* 305 F.3d 763, 768 (7th Cir. 2002).

### A.  Hansen's FMLA Interference Claim

To establish an FMLA interference claim, an employee must prove (1) he was eligible for FMLA; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied FMLA benefits to which he was entitled. *Riley v. City of Kokomo,* 909 F.3d 182, 188 (7th Cir. 2018).

6

It is undisputed that Valpo was covered by the FMLA, and that Hansen was eligible for FMLA protections, entitled to leave, and gave sufficient notice. It is the final element that is at issue. Hansen alleges that Valpo denied him the right to reinstatement — that is, the right to be restored to his position at the end of his FMLA leave. "But an employee's right to reinstatement is not absolute." *Simpson v. Office of Chief Judge of the Circuit Court*, 559 F.3d 706, 712 (7th Cir. 2009). "The FMLA allows an employer to refuse to restore an employee to their former position" when the employee "would have been demoted or terminated regardless of whether []he took FMLA leave." *Id.*

Valpo hangs its hat on the exception set out in *Simpson*. In other words, they tell me they were planning to eliminate Hansen's position whether he took FMLA leave or not. Recall that Wilson-Futrell and Kutch talked about eliminating Hansen's position months earlier and before he requested FMLA leave. Recall further that, to prove this fact, Valpo has submitted sworn declarations from Deondra Devitt and Annmarie Wilson-Futrell. [DE 34-1 Exh. A, B.] These declarations state that Valpo was working on restructuring the Building Services Department to use its resources more efficiently, and that Wilson-Futrell viewed the Assistant Director of Building Services as an unnecessary layer of management. Wilson-Futrell's declaration asserts that she had been deliberating the issue for some time, and had spoken to her supervisor, Kutch, about the issue, as well as Hansen. The plan Wilson-Futrell and Kutch eventually reached, the declarations assert, was to add a new building supervisor position and have the supervisors directly report to the Director of Building Services, Wilson-Futrell. With regard to the timing, the declarants assert they decided to eliminate the Assistant

7

Director position in May because it was the end of the academic year, which they state is a common time to eliminate positions. This explanation supports that the decision to eliminate Hansen's position did not have to do with Hansen taking FMLA leave.

In response, Plaintiff denies that these declarations are true. He points to the fact that, while these declarations line up with what Hansen was told was the reasoning, the Valpo General Counsel told Hansen's attorney after Hansen's position was eliminated that no decision had actually been made yet on creating a new supervisor position, and that it took well over a year for the new supervisor position to actually be created. Based on this, Hansen asserts that there was no plan at the time to actually restructure the department, and that it is a reason Valpo created to screen their real, discriminatory purpose.

However, the fact that the General Counsel stated that Valpo had not decided whether it would make a new supervisor position does not contradict that Valpo employees in the Building Services Department, Kutch and Wilson-Futrell, were planning on restructuring it, or that they considered the Assistant Director position to be an unnecessary layer of management. Instead of providing evidence refuting those points, Hansen poses a series of rhetorical questions doubting the explanation, its timing, and the lack of "concrete documentation" of its existence. [DE 41, 5.] Hansen states that the "only 'evidence' presented by Defendants is contained within multiple self-serving affidavits[.]" *Id.* at 7.

Summary judgment is decided on evidence, not allegations. *Cleveland v. Jackie*, 2020 WL 2041681, at *2 (N.D. Ind. April 28, 2020) ("Summary judgment is decided on

8

admissible evidence, not unsubstantiated allegations."). Affidavits or declarations, like the ones submitted here, are evidence that is regularly considered at the summary judgment stage. Indeed, Federal Rule of Civil Procedure 56(c)(1) specifically allows for it. Affidavits are especially useful in a case like this one. This is because, as I was told in the briefing, Hansen decided against taking any depositions during discovery. In such a case, what else could a defendant rely on other than sworn affidavits in establishing an entitlement to summary judgment?  In short, the declarations submitted in this case are competent evidence, based on personal knowledge of the affiants. The burden is then on Hansen to demonstrate the evidence is genuinely disputed by pointing the court to admissible evidence to the contrary. Just saying something isn't so and asking a series of rhetorical questions doesn't cut it.

Plaintiff has not provided any cites to the record that dispute that Valpo or its employees wanted to restructure the Building Services Department or that they considered the Assistant Director position to be unnecessary. Hansen could have submitted a declaration from another Valpo employee with knowledge of this subject, or could have deposed *any* of the defendants in this case, including the ones who submitted declarations, to probe their explanation for this adverse employment action. Hansen did not do so and thus has failed to genuinely dispute these facts.

That there isn't *other* evidence corroborating portions of the declarations does not make the declarations themselves not evidence. So long as the declaration "meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts" it may be

9

considered. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quoting *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)).

What's more, the fact that a declaration is "self-serving" is not a reason to disregard it. That old saw was laid to rest long ago. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); *Bhattacharya v. State Bank of India*, 2022 WL 4482764, at *4 (N.D. Ind. Sept. 27, 2022) ("But the fact that SBI's declarations may be self-serving does not undermine their evidentiary value."); *Clark v. Bumbo Int'l Tr.*, No. 15 C 2725, 2017 WL 3704825, at *4 (N.D. Ill. Aug. 28, 2017) (The "mere self-serving nature of the declaration does not permit the Court to discount it."). Hansen has provided no convincing argument that these declarations do not meet the usual requirements, so the court considers them as part of the record, regardless of whether they are self-serving. *Buie*, 366 F.3d at 504; *see also Cheli v. Taylorville CUSD # 3*, 657 F. Supp. 1136, 1147 (C.D. Ill. 2023) ("[A] court may consider self-serving statements in affidavits if they are based on personal knowledge and set forth specific facts.") (citing *Buie*, 366 F.3d at 504).

If an employer "presents evidence that its employee was not entitled to [his] position regardless of [his] taking leave, the employee must 'overcome the assertion' to establish a viable FMLA interference claim." *Simpson*, 559 F.3d a 714. Hansen has brought forth no evidence showing that the employer's reasoning was related to his FMLA leave, much less provided evidence that overcomes Valpo's assertions to the contrary, and thus the interference claim cannot survive summary judgment.

**FMLA Retaliation Claim**

"Retaliation claims under the FMLA require that: (1) the employee engaged in statutorily protected activity; (2) the employer subjected [him] to an adverse action; and (3) the protected activity caused the adverse action." *Riley*, 909 F.3d at 188. A retaliation claim "requires proof of discriminatory or retaliatory intent." *Goelzer*, 604 F.3d at 995. It is undisputed that Hansen engaged in statutorily protected activity and that Valpo subjected him to an adverse employment action. Once again, it is the final element that causes Hansen's claim to fail.

Hansen says he has shown retaliatory intent in three ways: the allegedly contradictory explanations for eliminating the position, the failure to give Hansen the new supervisor position they were making, and temporal proximity between Hansen's FMLA leave and his termination. [DE 41, 8-9.]

Hansen argues that the "contradictions and falsity of Defendants' given reason for termination, support that Hansen's termination was in retaliation for exercising his FMLA rights." [DE 41, 8.] First, Hansen has not shown a contradiction or falsity. The fact that the plan to add a fourth building supervisor position was not approved yet by Valpo's Office of Finance Administration does not mean that Wilson-Futrell or other decisionmakers were not planning to create it when they spoke to Hansen. Even if it were shown that Wilson-Futrell was wrong about Valpo making this new position, which she was not as it was eventually made, that would not support a finding of discriminatory intent, as Hansen's own cited caselaw supports. *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012) ("The question is not whether the employer's stated reason was

11

inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge.") (quoting *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir.2011)). Second, regardless, the decision to create or not create a fourth building supervisor position does not determine whether Valpo decisionmakers considered the Assistant Director position to be unnecessary nor show that they thought the Building Services Department needed to be restructured. It is for these latter reasons that Hansen's position was eliminated.

Hansen's only cited case supporting the proposition that contradictions can support a finding of pretext is *Coleman v. Donahoe,* a Title VII discrimination case. 667 F.3d 835 (7th Cir. 2012). In addition to being a very distinct case involving performance issues being a pretext for race and sex discrimination, the plaintiff brought relevant comparator evidence and cited substantial arbitral findings supporting that there was pretext. Hansen has not brought forth evidence refuting the stated reasons for the elimination of his position, and the only comparators in the record are instances of Valpo *not* eliminating the positions of employees for taking FMLA leave. They also presented undisputed evidence that Hansen himself had taken FMLA leave two years prior without incident.

"Even assuming the restructuring was legitimate," Hansen states, "Defendants violated the FMLA by refusing to place Hansen in the new supervisor role or inform him of its creation. This further demonstrates retaliatory intent." [DE 41, 9.] Hansen did not have the right to be placed in a different, nonequivalent position when his position was eliminated.  29 U.S.C. § 2614; *see also Daugherty v. Wabash Center, Inc.,* 577 F.3d 747

(7th Cir. 2009) ("[T]he FMLA only entitles employees to the *same* position they would have otherwise been entitled to[.]") (emphasis added). Further, as Hansen testified, he was told during the May 22, 2023 meeting "once the supervisor position is posted, that I could apply for it." [DE 34-1, Exh. C, 166:21-23.]  Hansen has failed to explain how not placing him directly into a different, nonequivalent role at Valpo, and telling him he could apply to the new position once it is posted, is evidence of retaliatory intent.

Hansen relies on *Repa v. Roadway Express, Inc.*, 477 F.3d 938 (7th Cir.2007) to support a finding of retaliatory intent.  [DE 41, 9.]  But *Repa v. Roadway Express Inc.* is way off the mark. *Repa* does not concern a failure to reinstate, nor does it even concern the issue of what constitutes retaliatory intent. Instead, *Repa* dealt with an employer improperly requiring an employee "to use sick and vacation leave while she was using FMLA leave and receiving disability benefits." *Id.* at 939.

This only leaves the timing. Hansen was informed that the Assistant Director position was being eliminated, and accordingly that his employment was being terminated, months after requesting FMLA leave, and while he was still on extended leave. However, "'[s]uspicious timing alone rarely is sufficient to create a triable issue,' and on a motion for summary judgment, 'mere temporal proximity is not enough to establish a genuine issue of material fact'" in an FMLA case. *Riley*, 909 F.3d at 188 (quoting *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009). The "fact that one 'event preceded another does nothing to prove that the first event caused the second. Rather, other circumstances must also be present which reasonably suggest that the two events

are somehow related to one another.'" *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir.2000) (internal citations omitted).

There may be a rare instance where the timing is so suspicious that an FMLA claim can survive summary judgment just by proving the timing, but this is not that case. Hansen began discussing FMLA leave for this surgery with Valpo in September of 2022, and started his FMLA leave in February 2023. He was terminated in May of 2023. That is many months for intervening causes to arise, and the Seventh Circuit has affirmed summary judgment for employers in employment cases for retaliation with much more proximate timing than the timing here. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) ("seven-week interval" between complaint of harassment and termination "does not represent that rare case where suspicious timing, without more, will carry the day"). The timing of the termination alone is not enough in this case, and Hansen has not cited evidence otherwise suggesting that his termination was related to his FMLA leave.

### Conclusion

Even construing all inferences in his favor, Hansen has not raised an issue of material fact that could allow a reasonable jury to find a verdict in his favor. Accordingly, Defendants' motion for summary judgment on both of Hansen's remaining claims [DE 33] is GRANTED.

**SO ORDERED**.

ENTERED: March 19, 2026.

/s/ Philip P. Simon

14

PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT